IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

------------------------------------x
In re:                              :
                                    :   Chapter 11
THE IT GROUP, INC.,                 :
    et al.,                         :   Case No. 02-10118 (MFW)
                                    :
            Debtors.                :   Jointly Administered
                                    :
_____:
                                    :
OFFICIAL COMMITTEE OF               :
UNSECURED CREDITORS OF THE IT       :
GROUP, et al., On Behalf of The Estate of :
The IT Group, Inc., et al.,         :
                                    :
            Plaintiff,              :   Adv. Proc. No. 04-50542 (PBL)
                                    :
    v.                              :
                                    :
FEDERAL INDUSTRIAL PRODUCTS,        :   Re: Docket Nos. 18, 19
                                    :
            Defendant.              :
                                    :
------------------------------------x

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT'S MOTION TO WITHDRAW THE REFERENCE**

Plaintiff, the IT Litigation Trust (the "Plaintiff"), successor to The IT Group, Inc. and its affiliated debtors (collectively, the "Debtors") and the Official Committee of Unsecured Creditors (the "Committee"), by and through the IT Litigation Trust Trustee, AlixPartners LLC (the "Trustee") and its undersigned counsel, files this Memorandum of Law in Opposition to Defendant's Motion to Withdraw the Reference (the "Motion")[1] filed by Federal Industrial Products (the "Defendant"), and respectfully represents as follows:

---

[1] Plaintiff notes that Defendant failed to file a motion for determination of whether this proceeding is core or non-core contrary to the requirements of Del. Bankr. LR 5011-1. As set forth herein, this proceeding is clearly a core matter.

601925v1

MIAMI 605922 (2K)

## BACKGROUND

1. On January 16, 2002 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code"), with the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), thereby commencing their respective chapter 11 cases (collectively, the "Cases").

2. Defendant engaged in a certain business transaction with the Debtors, whereby the Debtors were obligated to pay Defendant the sum of $12,974.40. The Debtors, within ninety days of the Petition Date, transferred $12,974.40 (the "Transfer") to Defendant on account of the antecedent debt. See Complaint to Avoid and Recover Transfers of Property Pursuant to 11 U.S.C. § 547 and 550 of the Bankruptcy Code (as amended, the "Complaint").

3. The Debtors were insolvent on the dates the Debtors made the Transfer to the Defendant. See 11 U.S.C. § 547(f).

4. On or about January 9, 2004, prior to the statutory deadline set forth in section 546 of the Bankruptcy Code, Plaintiff filed its Complaint against Defendant, along with over 1,200 other similar complaints against recipients of avoidable transfers, seeking to avoid and recover Transfers made to Defendant within 90 days of the Petition Date.

5. By order dated April 5, 2004, the Bankruptcy Court confirmed the First Amended Joint Chapter 11 Plan of The IT Group, Inc. and its Affiliated Debtors Proposed by the Debtors and the Official Committee of Unsecured Creditors (the "Plan").

6. The effective date of the Plan occurred on April 30, 2004. Pursuant to the Plan, the Trust was established and vested with the Debtors' remaining assets and causes of action

including, without limitation, all avoidance actions arising under chapter 5 of the Bankruptcy Code (such as the preference claim against Defendant set forth in the Complaint).

7. The Defendant failed to answer or otherwise respond to the Complaint in a timely manner. As a result, on September 30, 2004, the Plaintiff filed its (i) Application for Entry of Default and (ii) Application for Entry of Default Judgment (collectively, the "Applications").

8. On or about November 9, 2004, an Entry of Default and Judgment by Default in the sum of $12,974.40 (collectively, the "Defaults") were entered against Defendant. Subsequently, on November 26, 2004, the deputy clerk of this Court closed the adversary proceeding (the "Adversary Proceeding").

9. On or about September 7, 2005, Defendant filed its (i) Motion to Vacate Default Judgment and (ii) Motion to Re-Open Adversary Proceeding.

10. On or about September 12, 2004, Defendant filed its Motion requesting withdrawal of the reference from the Bankruptcy Court to the United States District Court of Delaware (the "District Court").

**ARGUMENT**

11. Defendant is not entitled to a withdrawal of the reference. 28 U.S.C. § 157(d) provides, in pertinent part:

> [t]he district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

28 U.S.C. § 157(d).

12. "[S]ection 157(d) envisions two types of withdrawal of a reference to the District Court: (1) mandatory withdrawal, and (2) permissive withdrawal." In re Homeland Stores, Inc., 204 B.R. 427, 430 (D. Del. 1997). Specifically, "[m]andatory withdrawal must occur when (1) consideration of federal law outside of the Bankruptcy Code is necessary to resolve the case or proceeding, and (2) such consideration of federal law outside the Bankruptcy Code is 'substantial and material'." In re CM Holdings, Inc., 221 B.R. 715, 721 (D. Del. 1998) (citation omitted). "Application of this standard furthers the underlying policy of section 157(d), which is to withdraw matters requiring the application of non-bankruptcy law from the relatively less experienced bankruptcy court to the more experienced district court." In re Smith Corona Corp., 205 B.R. 712, 714 (D. Del. 1996) (citation omitted). Importantly, "[m]andatory withdrawal is a fact specific inquiry, looking to circumstances involved in each case." Adelphia Communications Corp. v. Rigas, 2003 WL 21297258 *3 (S.D.N.Y. June 4, 2003) (citing In re Keen Corp., 182 B.R. 379, 382 (S.D.N.Y. 1995)). "[T]he party seeking withdrawal of the reference bears the burden of demonstrating that substantial and material consideration of non-bankruptcy law is necessary to resolve the case." See In re Continental Airlines, 138 B.R. 442, 445 (D. Del. 1992); see also Homeland Stores, 204 B.R. 427, 430 (same). In this matter, mandatory withdrawal is not applicable because resolution of the Complaint is governed by the Bankruptcy Code and will not require any interpretation of non-bankruptcy federal law. Moreover, Defendant has not demonstrated that consideration of non-bankruptcy law is necessary to resolve the case.

13. Further, the District Court has noted that in determining whether or not permissive withdrawal is warranted, "the initial determination should be whether the claim is a core bankruptcy proceeding or whether it is non-core." In re NDEP Corp., 203 B.R. 905, 908

(D. Del. 1996) (citing In re Orion Pictures Corp., 4 F.3d 1095, 1101 (2d Cir. 1993) cert. dismissed, 511 U.S. 1026 (1994)). "Core" proceedings are those with which the bankruptcy court has greater familiarity and expertise, as distinct from "non-core" proceedings. 28 U.S.C. § 157. In core proceedings, the bankruptcy court has the authority to "enter appropriate orders and judgments." 28 U.S.C. § 157(b)(1). By contrast, in non-core proceedings, the bankruptcy court is limited to submitting proposed findings of fact and conclusions of law to the district court for *de novo* review. 28 U.S.C. § 157(c)(1).

14. In addition to the core or non-core nature of the proceeding, the Third Circuit requires "in clear terms that cause be shown before the reference can be withdrawn." In re Pruitt, 910 F.2d 1160, 1168 (3d. Cir. 1990) (emphasis added). Courts in the Third Circuit consider the following factors to determine whether or not "cause" exists to withdraw the reference:

> the goals of promoting uniformity in bankruptcy administration, reducing forum shopping and confusion, fostering the economic use of the debtors' and creditors' resources, and expediting the bankruptcy process.

In re Pruitt, 910 F.2d at 1168 (quoting Holland American Ins. Co. v. Succession of Roy, 777 F.2d 992, 999 (5th Cir. 1985)). As set forth herein, the analysis of these factors warrants denial of the Motion.

**I.    This is a Core Proceeding**

15. The instant action for recovery of a preferential transfer was created by the Bankruptcy Code, could not exist outside of a bankruptcy case, and, therefore, is a core proceeding. 28 U.S.C. § 157(b)(2)(F) and (H).

16. Upon referral by the District Court, section 157(b) of title 28 of the United States Code ("section 157(b)") provides a bankruptcy court the judicial power to adjudicate "core" proceedings. 28 U.S.C. § 157(b)(1). It provides in pertinent part:

> Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title.

28 U.S.C. § 157(b)(1).

17. In a core proceeding, the bankruptcy court has "comprehensive power to hear, decide and enter final orders and judgments." Halper v. Halper, 164 F.3d 830, 836 (3d Cir. 1999). Consequently, the characterization of a proceeding as core is crucial in bankruptcy cases. Id.

18. Courts in the Third Circuit determine a proceeding's core status by applying the test enunciated by the Third Circuit in Halper. Id. First, the nature of this proceeding fits squarely within the illustrative example set forth in section 157(b)(2) of title 28 of the United States Code, which provides, in pertinent part:

> Core proceedings include, but are not limited to –
>
> (F)   proceedings to determine, avoid, or recover preferences;
>
> ….
>
> (H)   proceedings to determine, avoid, or recover fraudulent conveyances;

28 U.S.C. § 157(b)(2).

19. Second, the proceeding must invoke a substantive right provided by the Bankruptcy Code or must be a proceeding "that by its nature, could arise only in the context of a bankruptcy case." Halper, 164 F.3d at 836.

20. In Halper, the sole shareholder of a debtor-corporation brought an adversary proceeding seeking to avoid the debtor's granting of a signing bonus, arguing that it constituted a fraudulent transfer under state and federal bankruptcy law. Id. at 838. Applying the foregoing reasoning, the court made the two required findings. First, the court found the proceeding fit the description of a core proceeding under 28 U.S.C. § 157(b)(2)(H). Second, the court found that because the relief sought "invoked the trustee's power to avoid fraudulent conveyances under § 548, a substantive provision of the bankruptcy code," the claim "arises in a bankruptcy" and the nature of the proceeding was, therefore, "core." Id.

21. Similarly applying the Third Circuit's analysis to the instant case leaves no doubt that the instant proceeding is a core proceeding under 28 U.S.C. § 157(b). First, this proceeding seeks to avoid and recover certain preferential transfers pursuant to sections 547 and 550 of the Bankruptcy Code. These matters are clearly identified as "core" matters under section 157(b); therefore, the first required element of the Third Circuit's analysis is satisfied.

22. Second, also like the proceeding in Halper, this proceeding could arise only in the context of a bankruptcy and is unquestionably a core proceeding. Therefore, the second required element of the Third Circuit's analysis is satisfied as well.

23. If an adversary proceeding is a core proceeding, such a determination "strongly indicate[s] that there is no cause to withdraw the reference." In re Enron Corp., 295 B.R. 21, 26 (S.D.N.Y. 2003); see also In re Burger Boys, Inc., 94 F.3d 755, 762 (2d Cir. 1996) (observing that whether the claim is core or non-core is the "most important" factor to be considered).

II. **The Court is Not Compelled to Withdraw the Reference Simply Because the Defendant Has Asserted its Right to a Jury Trial**

24. The Defendant contends that sufficient cause for permissive withdrawal of the reference exists because Defendant (i) has asserted its right to a jury trial, (ii) has refused to

consent to such trial before the Bankruptcy Court, (iii) has not subjected himself to the jurisdiction of the bankruptcy court, and (iv) has not filed a proof of claim in these Cases. See Motion, ¶¶ 7. The factors articulated by Defendant are insufficient, either standing alone or taken together, to justify withdrawal of the reference here.

25. It is well-settled that withdrawal of the reference is not compelled by a party's mere assertion of its right to a jury trial pursuant to the Seventh Amendment of the U.S. Constitution. See In re Appoline.com, Inc., 303 B.R. 723, 727-28 (E.D.N.Y. 2004) (denying defendant's motion to withdraw reference—premised solely upon defendant's demand for jury trial—where adversary proceeding was in preliminary stage, bankruptcy court had presided over similar adversary proceedings, had complete understanding of factual background of the case, and defendant failed to demonstrate that withdrawal would serve interests of judicial economy or that it would be prejudiced by bankruptcy court's management of pre-trial matters); In re Enron Corp., 295 B.R. at 27 (denying motion to withdraw reference of core proceeding, notwithstanding defendant's demand for jury trial and refusal to consent to bankruptcy court presiding over the trial, where adversary proceeding was in preliminary stage, creditors' committee indicated dispositive motions would be filed, and there would likely be numerous other avoidance actions before the bankruptcy court on many of the same factual and legal grounds); In re Enron Power Mktg., Inc., 2003 WL 68036, at *6-7, 11 (S.D.N.Y. 2003) (denying withdrawal of bankruptcy reference despite defendant's demand for jury trial where proceeding was likely to be resolved by dispositive motion, discovery would require judicial oversight, and bankruptcy judge presiding over several similar cases was "familiar with the salient issues in all cases and far more able to supervise all of them together, unless and until a jury trial is necessary.").

26. Just as it was found in the cases cited above: (i) this adversary proceeding is in the preliminary stages; (ii) the Bankruptcy Court is currently presiding over, and has presided over, hundreds of similar adversary proceedings involving preferences and other avoidable transfers in the Cases; (iii) the Bankruptcy Court has a complete understanding of the factual background of the Cases, the numerous adversary proceedings regarding preferential transfers akin to the Defendant's, and is best suited to adjudicate this adversary proceeding along with the more than one hundred other adversary proceedings seeking similar relief; and (iv) Defendant has failed to demonstrate that withdrawal of the reference would serve the interests of judicial economy or that it would be prejudiced by the Bankruptcy Court's management of pre-trial matters. Accordingly, the Motion should be denied.

27. As one court observed,

> [a] rule that would require a district court to withdraw a reference simply because a party is entitled to a jury trial, regardless of how far along toward trial a case may be, runs counter to the policy favoring judicial economy that underlies the statutory scheme governing the relationship between the district courts and bankruptcy courts. Although withdrawal is an important component of this scheme, the court must employ it judiciously in order to prevent it from becoming just another litigation tactic for parties eager to find a way out of bankruptcy.

In re Kenai Corp., 136 B.R. 59, 61 (S.D.N.Y. 1992) (denying motion in the interest of judicial economy and administration despite defendant's assertion of right to jury trial). Simply put, the authority cited by Defendant does not require withdrawal of the reference whenever a defendant asserts its right to a jury trial.

28. Importantly, like Defendant's demand for a jury trial, the Defendant's unwillingness to consent to trial before the Bankruptcy Court also does not warrant withdrawal of the reference. Enron Corp., 295 B.R. at 27 (holding that "a district court is not compelled to

withdraw a reference simply because a party is entitled to a jury trial" in a case where defendant refused to consent to a jury trial before the bankruptcy court) (citation omitted).

29. Moreover, the Defendant's reliance on the U.S. Supreme Court's holding in Granfinanciera, S.A. v. Nordberg, 492 US. 33 (1989) is flawed. It is well-recognized that the Supreme Court in Granfinanciera held simply that the Seventh Amendment of the U.S. Constitution grants a fraudulent transfer defendant a right to a jury trial. Granfinanciera, 492 US. at 64-65. Indeed, the Court specifically clarifies that its narrow holding "does not express any view as to whether the Seventh Amendment or Article III allows a jury trial in such actions to be held before non-Article III bankruptcy judges." This statement clearly demonstrates the flaw of the Defendant's position.

30. Furthermore, Defendant's reliance on In re Clay, 35 F.3d 190 (5th Cir. 1994) in support of its Motion is misplaced. In Clay, the issue presented was whether the bankruptcy judge had authority to conduct a jury trial without the consent of the parties. By contrast, in the instant Adversary Proceeding, the Plaintiff does, in fact, dispute the Defendants' right to a jury trial. Accordingly, the Defendant's reliance on Clay is misplaced.

### III. Consideration of All Relevant Factors Dictates Denial of the Motion

31. Once a court determines that a matter is a core proceeding, it should next consider whether permissive withdrawal under 28 U.S.C. § 157(d) promotes: (a) uniformity in bankruptcy administration; (b) reduces forum shopping and confusion; (c) fosters the economic use of the debtors' and creditors' resources; and (d) expedites the bankruptcy process. Pruitt, 910 F.2d at 1168.

32. With the exception of the Defendant's right to a jury trial, which, as discussed herein, is insufficient by itself to warrant withdrawal of the reference, the facts and issues

presented here warrant denial of the Motion. See, e.g., Enron Corp., 295 B.R. at 27. There are literally hundreds of similar preference actions currently pending before the Bankruptcy Court in these Cases. Maintaining such actions in the Bankruptcy Court will certainly promote uniformity and administration, reduce confusion, and foster the economic use of both estate and judicial resources. Enron Corp., 295 B.R. at 27; Enron Power, 2003 WL 68036 at *6-7.

33. Furthermore, many of the preference actions are likely to involve similar factual scenarios and legal issues. The Bankruptcy Court is, therefore, best equipped to uniformly decide these issues, and its intimate knowledge of the factual and legal aspects of these Cases and the related adversary proceedings will prove a substantial advantage to the expeditious resolution of the actions. Id.

34. Conversely, granting the Motion will not foster the economic and efficient use of the Debtors' limited resources by forcing the Plaintiff to litigate substantially similar matters in at least two forums. Similarly, withdrawal of the reference would not lead to the most efficient use of judicial resources. Not only would the District Court be required to expend time familiarizing itself with the law applicable to this proceeding, it would also need to familiarize itself with the factual and procedural background of the Cases, the filing of which took place nearly two and a half years ago. Indeed, the Bankruptcy Court, with its knowledge of these Cases, is the most efficient forum for this adversary proceeding's resolution. See In re Kenai Corp., 136 B.R. at 61 (denying motion to withdraw the reference in the interests of judicial economy and administration, despite defendant's assertion of right to jury trial); see also Enron Corp., 295 B.R. at 27; Enron Power, 2003 WL 68036, at *6-7. Accordingly, the Motion should be denied.

IV.     **Plaintiffs Do Not Consent to a Jury Trial**

35.     In accordance with Fed. R. Civ. P. 38(b), made applicable in bankruptcy proceedings pursuant to Fed. R. Bankr. P. 9015, and 28 U.S.C. § 157(e), a bankruptcy judge is authorized to preside over a jury trial only upon receipt of the express consent of all the parties.

36.     The Plaintiff hereby expressly states that it <u>does not consent</u> to a jury trial on any of the issues set forth in the Complaint.

## CONCLUSION

For the foregoing reasons, the Motion should be denied.

Dated: September 22, 2005

THE BAYARD FIRM

By: _____
Jeffrey M. Schlerf (No. 3047)
Eric M. Sutty (No. 4007)
Mary E. Augustine (No. 4477)
222 Delaware Avenue, Suite 900
Wilmington, Delaware 19801
(302) 655-5000

-and-

John K. Cunningham
Gabriel J. Procaccini
WHITE & CASE LLP
200 South Biscayne Blvd., Suite 4900
Miami, Florida 33131
(305) 371-2700

Attorneys for Plaintiff

601925v1

MIAMI 605922 (2K)

## CERTIFICATE OF SERVICE

I, Mary E. Augustine, do hereby certify that on this 22nd day of September, 2005, I caused a copy of the foregoing **Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Withdraw Bankruptcy Reference Pursuant to 28 U.S.C. § 157(d)** to be served upon the following individuals in the manner indicated below:

**Via Hand Delivery**

John D. Demmy
STEVENS & LEE, P.C.
1105 North Market Street, 7th Floor
Wilmington, Delaware 19801

**Via United States First Class Mail**

Ben L. Aderholt
LOOPER, REED & MCGRAW, P.C.
1300 Post Oak Boulevard, Suite 2000
Houston, Texas 77056

*/s/ M. Augustine*
Mary E. Augustine (No.4477)

MIAMI 605922 (2K)